## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF WEST VIRGINIA
## ELKINS

**SEAN WILLIAMS,**

       Petitioner,

**v.**                                               **CIVIL ACTION NO. 2:19cv19**
                                               **(Judge Bailey)**

**FREDERICK ENTZEL,** Warden,

       Respondent.

## MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS, OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Currently pending before this Court is respondent's Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment [Doc. 11], filed October 15, 2019. On October 16, 2019, a ***Roseboro*** Notice was issued. [Doc. 12]. On November 7, 2019 the petitioner filed a response which he styled "Motion for Reply to Conclusion." [Doc. 14]. This matter is now ripe for decision. For the reasons that follow, this Court will grant the motion.

On February 28, 2019, the petitioner, Sean Williams, filed this *pro se* Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241. [Doc. 1]. On September 9, 2019, the Magistrate Judge made a preliminary review of the petition and determined that summary dismissal was not warranted. Accordingly, an Order to Show Cause was entered. [Doc. 5]. On October 15, 2019, the respondent filed a Motion to Dismiss or, in the alternative, for Summary Judgment. [Doc. 11].

## BACKGROUND

On May 20, 1997, the petitioner was arrested and detained for Armed Robbery in Case Number F-4738-97(C).  On November 21, 1997, he was sentenced in the Superior Court of the District of Columbia to a 5 to 15-year term of imprisonment. [Doc. 11-3 at 6]. On December 11,  2003, the petitioner was released via parole with 3082 days remaining on his sentence and a full term expiration date of May 19, 2012.  Id. at 4.

On July 13, 2005, a warrant was issued on the petitioner for violating his parole. [Doc. 11-3 at 8].  On June 15, 2006, the petitioner was again released via parole with 2799 days remaining on a sentence and a full term expiration date of February 12, 2014. Id. at 13.

On October 11, 2007, a warrant was issued on the petitioner for again violating his parole. [Doc. 11-3 at 15].  On September 15, 2008, the petitioner was released via parole with 2647 days remaining on a sentence and a full term expiration date of December 15, 2015.  Id. at 21.

On March 27, 2009, a warrant was issued on the petitioner for violating his parole. [Doc. 11-3 at 29].  On April 12, 2011, the petitioner was released via parole with 2072 days remaining on his sentence and a full term expiration date of December 13, 2016. Id. at 35.

On August 21, 2011, the petitioner was arrested by Baltimore County Police Department for Possession with the Intent to Distribute Products, CDS Possession, Felon in Possession of a Firearm, and Possession of a Firearm During a Drug Offense. [Doc. 11-3 at 42-47].  On April 30, 2012, he was sentenced to a 5-year term of imprisonment for Felon in Possession of a Firearm and a 4-year term of imprisonment for CDS Possession, the two terms to run concurrently.   Id.   The petitioner completed the sentence on

2

September 23, 2014 and was released to exclusive federal custody on September 24, 2014.[1] Id. at 52.

On September 26, 2011, while the petitioner was in custody on his arrest by Baltimore County, a warrant was issued for his parole violation. [Doc. 11-3 at 54].  His revocation sentence was computed to begin on September 24, 2014 (when he became an exclusive federal inmate), and jail credit was given for September 23, 2014.  On April 24, 2015, the petitioner was released via parole with 1856 days remaining on his sentence in a full term expiration date of May 25, 2020.  Id. at 59.

On October 6, 2015, a warrant was issued on the petitioner for violating his parole. [Doc. 11-3 at 69].  On November 3, 2015, the petitioner was arrested in the State of Maryland and held for Unauthorized Use of a Vehicle.  Id. at 74.  On January 11, 2016, the petitioner was convicted by the Circuit Court for Baltimore City, Maryland, and sentenced to 6 months jail.  Id. at p. 77.  The Court awarded credit for time served from November 3, 2015, through January 11, 2016.  Id.  The sentence expired on March 15, 2016.

On June 3, 2016 the petitioner's parole was subsequently revoked. [Doc. 11-3 at 81].  He was continued to a presumptive re-parole date of July  2, 2018, after service of 32 months.  Id.  On October 30, 2018, a hearing was conducted, and the United States Parole Commission  rescinded  the  petitioner's  parole  grant  effective  August  31,  2018  and continued him to a presumptive parole on November 30, 2019.  This action required the

---

[1] For about 90 years, the Lorton Correctional Complex in rural Fairfax County, Virginia served as the District of Columbia's prison. The Revitalization Act, infra, required the D.C. Department of Corrections to transfer the sentenced felon population formerly housed at Lorton to the BOP, and the Lorton Facility shut down in 2001. Therefore, although the record does appear to have a cumulative list of the petitioner's incarceration, he would have been in the custody of the BOP following his D.C. sentence and each time his parole was revoked.

service of an additional 15 months. The Notice of Action indicated that this new presumptive parole date was conditioned upon his maintaining good institutional conduct and the development of a suitable release plan.  The reasons given for this action were the fact that the petitioner had committed recession behavior classified as administrative.  More specifically, the petitioner had committed two drug-related infractions. [Doc. 11-3 at 85].  While it is unclear what has transpired since that date, according to the BOP inmate locator, the petitioner's current projected release date is April 15, 2021.

### CONTENTIONS OF THE PARTIES

The petitioner maintains that the BOP has unlawfully computed his sentence.  More specifically, the petitioner alleges that in February of 2015 when he was incarcerated at F.D.C. Philadelphia, the Parole Commission wrongly computed his time structure by not granting him time credit for time served in the Maryland Department of Corrections, which inadvertently caused the BOP to unlawfully compute his sentence.  For relief, the petitioner requests a correction of his full-term date, reduction of maximum sentence to March 2018, and immediate release upon correction of the inappropriate time structure.

In response to the petition, the respondent maintains that this petition must be dismissed because the BOP correctly computed the petitioner's D.C. Code offense sentence, and he is thus not entitled to the relief he seeks.  In addition, the respondent maintains that this petition must be dismissed because the petitioner failed to exhaust his administrative remedies regarding his sentence computation and is thus precluded from filing the petition.

In his reply, the petitioner contends that his petition should be granted because the Parole Commission did not give him time credit for the time spent in the Maryland

4

Department of Corrections which inadvertently made the BOP miscompute his D.C. Code offense.  In support of this allegation, the petitioner cites D.C. Code § 24-221.03 which provides that:

> 1. Every person shall be given credit on the maximum and the minimum term of imprisonment for time spent in custody, or on parole in accordance with § 24-406, as a result of the offense for which the sentence was imposed. When entering the final order in any case, the court shall provide that the person be given credit for the time spent in custody, or on parole in accordance with § 24-406.

It would appear that the petitioner believes that this code provision requires that the time during which he was incarcerated in the Maryland Department of Corrections from August 22, 2011 to September 23, 2014, be applied towards his full-term release date for his 1997 D.C. Superior Court sentence.

## STANDARD OF REVIEW

### A.  Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses."  *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the

light most favorable to the plaintiff. *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993); *See Also Martin* at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." *Conley* at 45-46. In *Twombly*, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly* at 554-55. Therefore, for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I.DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in *Ashcroft v. Iqbal*, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. *Id*.

6

**B. Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56(c) summary judgment motions in habeas cases. *See **Blackledge v. Allison***, 431 U.S. 63, 80 (1977). So too, has the Fourth Circuit Court of Appeals. ***Maynard v. Dixon***, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. ***Miller v. Federal Deposit Ins. Corp.***, 906 F.2d 972, 974 (4th Circ. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment, ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242-252 (1986).

In ***Celotex***, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. ***Celotex*** at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." ***Matsushita Electric Industrial Co. V. Zenith Radio Corp.***, 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. ***Id***. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine

issue for trial." ***Anderson*** at 256.  The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment.  ***Id***. at 248.    To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." ***Id***.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." ***Felty v. Graves-Humphreys Co.***, 818 F.2d 1126, 1128 (4th Cir. 1987).  Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation.  ***Anderson*** at 248.  Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." ***Matsushita*** at 587.

## ANALYSIS

On August 5, 1998, the United States Parole Commission obtained jurisdiction of D.C. Code offenders to grant and deny parole through the National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, § 1123(a)(1), 111 Stat. 712, 745, D.C. Code § 24-1231(a)("Revitalization Act").  *See also* ***Franklin v. District of Columbia***, 163 F.3d 625, 632 (D.C. Cir. 1998).  Effective August 5, 2000, the Commission was given the responsibility of supervising parolees and revoking parole. § 11231(a)(2) of the Act codified at D.C. Code § 24-131(a)(2).  The Revitalization Act provides that the Parole Commission was to follow the parole law and regulations of the District of Columbia, but also granted the commission "exclusive authority to amend or supplement any regulation interpreting or implementing the parole laws of the District of

Columbia with respect to felons." D.C. Code Ann. § 24-131(a)(1); ***Simmons v. Shearin***, 295 F.Supp.2d 599, 602 (D. Md. 2003).

The Revitalization Act also provides that the BOP is responsible for computing the sentences of D.C. offenders housed in BOP facilities. D.C. Code § 24-101(b). Moreover, such persons are "subject to any law or regulation applicable to persons committed for violations of the laws of the United States consistent with the sentence imposed." Id. at § 24-101(a). Therefore, although the BOP is responsible for computing sentences of D.C. offenders housed in its facilities, the District of Columbia continues to control the computation of such sentences.

The undersigned notes that the respondent spends considerable time discussing the concept of "street time." This discussion is in relation to the periods of time during which the petitioner was on parole. Although it does not appear that the petitioner is seeking credit against his 5-15 year sentence imposed by the District of Columbia on November 21, 1997, for the periods he was on parole, it is clear to the extent that he is seeking such credit, the same is not available.

Pursuant to a 1932 District of Columbia statute, a parolee is entitled to no credit on his sentence for the time spent under parole supervision. D.C. Code § 24-206(a). Therefore, whenever parole is revoked, the parolee sentence is prolonged by the amount of street time that is lost. ***Davis v. Moore***, 772 A.2d 205 (D.C. 2001).

However, the Good Time Credits Act ("GTCA") was enacted in 1987 and provided for credit toward the service of a sentence for time spent in custody or on parole. (D.C. Code § 24-431(a)). At that time, the D.C. Corporation Counsel interpreted the Act as

9

effecting an implicit repeal of the 1932 statute.   Therefore, the D.C. Department of Correction implemented a regulation which allowed a parole violator to retain credit for street time upon revocation of his or her parole. Nonetheless, the U.S. Parole Commission disagreed with Corporation Counsel's interpretation of the Act, and for those offenders who fell within its jurisdiction, it continued to deny street credit upon revocation of parole. ***Davis v. Moore***, 772 A.2d at 209-210.  This led to a situation in which D.C. offenders confined in D.C. institutions would receive street time credit upon revocation, but such offenders in federal institutions would not receive such credit.

This disagreement, and the resulting  disparity, was litigated in the Ninth Circuit and in the D.C. Circuit.  In ***Tyler v. United States***, 929 F.2d 451 (9th Cir. 1991), the Ninth Circuit found that the Corporation Counsel had incorrectly interpreted the statute. However, the D.C. Department of Corrections did not change its regulations.  ***Id***.

This issue was then litigated in ***Noble v. United States Parole Comm'n***, 887 F.Supp. 11 (D.C. 1995).   In ***Noble***, the United States District Court for the District of Columbia granted Noble's petition, concluding that D.C. code 24-431(a) authorizes credit for street time even when a prisoner's parole has been revoked.  Were that still good law, the petitioner might be entitled to habeas relief.  However, the U.S. Parole Commission appealed, and the United States Court of Appeals for the District of Columbia certified a question of law to the District of Columbia Court of Appeals pursuant to D.C. Code § 11-723.  The District Court of Appeals then held that no repeal had been affected by the enactment of the GTCA and that the rule mandating forfeiture of street time in 24-206, remained in effect.  ***United States Parole Comm'n v. Noble***, 693 A.2d 1084, 1085 (D.C.

1997), 711 S.2d 85 (D.C. 1998) (en banc)). Therefore, the U.S. Parole Commission correctly revoked the petitioner's street time, and there is no basis for granting his petition with respect to that issue.

What appears to be the true crux of the petition is the petitioner's belief that he is entitled to credit against his 1997 D.C. sentence for the time he spent in the custody of the Maryland Department of Corrections from August 22, 2011, to September 23, 2014.  As previously noted, the petitioner was released via parole on April 12, 2011, with 2072 days remaining on his sentence and a full term expiration date of December 13, 2016.  However, on August 21, 2011, the petitioner was arrested by Baltimore County Police Department and eventually sentenced to effective 5-year term of imprisonment.  Relying on D.C. Code § 24-221.03 (Jail time; parole), the petitioner maintains that he is entitled to such credit. However, he cites no case authority that would support this allegation, and the undersigned is unaware of any authority for his argument.

Rather, it appears that the petitioner misconstrues the import of this statute.  There is no question that the petitioner is entitled to credit for all time he has spent in custody for his D.C. conviction in Case Number F-4738-97(C).  Moreover, it appears from the documentation presented by the respondent, that he has received all such time and the petitioner does not argue otherwise. However, he is not entitled to credit against his D.C. sentence for time spent in custody for his Maryland conviction that resulted in yet another revocation of his parole.  D.C. Code § 24-221.09 refers to credit for time spent in custody as a result of the offense for which the sentence was imposed. This clearly means the time spent in custody for the D.C. offense, not for offenses in other jurisdictions which ultimately result in revocation of parole.

## CONCLUSION

For reasons stated above, the respondent's Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment **[Doc. 11]** is hereby **GRANTED**.  The petition **[Doc. 1]** is hereby **DENIED** and **DISMISSED WITH PREJUDICE**.  This Court further **DIRECTS** the Clerk to enter judgment in favor of the respondent and to **STRIKE** this case from the active docket of this Court.

As a final matter, upon an independent review of the record, this Court hereby **DENIES** the petitioner a certificate of appealability on the dismissed claims, finding that he has failed to make "a substantial showing of the denial of a constitutional right" on these claims. 28 U.S.C. § 2253(c)(2).

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein and mail a copy to the *pro se* petitioner.

**DATED**: April 28, 2020

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE